(83 App. Div. 54.)

PEOPLE ex rel. DINSMORE v. VANDEWATER et al.

(Supreme Court, Appellate Division, Second Department. May 28, 1903.)

1. HIGHWAYS—STATE ROAD—ALTERATION—POWER OF TOWN BOARDS.
   Laws 1896, p. 386, c. 423, entitled "An act to preserve forever the New York and Albany Post Road as a state public highway," which declares that the road shall be a public highway for travel forever, and provides that it shall be kept open and free to all travelers, and shall not be obstructed by any obstacle to free travel, and which forbids local authorities from licensing the laying of any railroad track on the highway except to cross it, prohibits a town board from making a material alteration in the road, it being the legislative purpose to preserve the road in its entirety.

2. SAME.
   1 Colonial Laws, p. 532, c. 131, established a certain highway. Laws 1882, p. 381, c. 317, provides that county boards of supervisors may authorize town boards to alter or discontinue any public highway laid out by the state within their boundaries. Held, that a town board, without authority from the proper county board of supervisors, had no power to make a material alteration in the highway established by 1 Colonial Laws, p. 532, c. 131.

3. SAME—DISPOSITION OF BED OF EXISTING HIGHWAY ON COMPLETION OF ALTERATION.
   A town board ordering a material alteration in the location of an existing highway has no authority to order that the bed forming the existing highway shall revert on the completion of the proposed alteration to, and

become the property of, a particular person, where there is nothing to show that such person or his grantors ever owned the bed of the highway.

Certiorari by the people, on the relation of Clarence G. Dinsmore, against H. Fremont Vandewater and others, as members of the town board of Hyde Park, county of Dutchess, and W. R. McCurdy, individually and as commissioners of highways of the town of Hyde Park, to review the action of the town board of Hyde Park in making an order closing up a part of the New York and Albany Post Road. Action of the town board annulled.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Edgerton L. Winthrop, Jr. (William Jay and Flamen B. Candler, on the brief), for relator.

Henry B. Anderson, for defendants.

GOODRICH, P. J. The relator, Clarence G. Dinsmore, applied for a writ of certiorari to review the action and determination of the town board of the town of Hyde Park and of the commissioners of highways of that town in the matter of altering a portion of the New York and Albany Post Road, lying within the limits of said town. He was the owner of an undivided interest for life in a large tract of land on both sides of the post road, upon which he is liable to be assessed by the highway commissioners for labor on the highway. The post road extends generally north and south, and between the northerly boundary of one part of the Dinsmore land and the southerly boundary of another part of it the post road makes a considerable detour to the west through land of Mrs. (Ruth) Mills. The proceeding under review relates to a proposed alteration in order to straighten the highway by extending it through the land of Mrs. Mills for a distance of 1,215 feet. Mrs. Mills owns the land on both sides of the old post road and of the new part of the road. The location will better appear by a diagram of the premises:

On October 11, 1900, Ogden Mills, husband of Ruth, and a taxpayer in the town, applied to the highway commissioners for an alteration of the road. On the same day the town board consented to the alteration, and on the 19th Mrs. Mills executed and delivered a consent to the alteration and a release to the town of all damages which might be occasioned thereby, upon the condition that the land forming the bed of the old highway should become her property upon the completion of the proposed alteration and the acceptance thereof

by the commissioners. On October 22d the commissioners ordered and determined that the alteration should be made, and the order, together with the application, the release, the survey, and the map, was filed in the town clerk's office. The commissioners made a contract with Mr. Mills by the terms of which he was to construct the bed of the highway as altered, without expense to the town, subject to the approval of the commissioners, and reserving the right to the public to use the old road until the alteration should be accepted by the commissioners. The work was commenced and continued up to the time of the filing of the petition. The roadbed has been constructed, and trees planted along the sides, but the side path has not yet been built, because it was not deemed safe to do so until the trees have taken root. Mr. Mills has expended upon the new road more than $3,800. On December 16, 1901, the commissioners accepted the bed of the highway, and permission was given to Mrs. Mills to fence up the old road, which was done, at the two points of intersection of the old post road with the new road, both of which fences were erected upon the line of Mrs. Mills' property. They ordered that the land forming the bed of the old highway should, upon the completion of the proposed alteration, revert to and become the property of Mrs. Mills, and that such land should be accepted by her in full satisfaction of all damages resulting to her premises by the alteration. The return of the town board and the highway commissioners alleges that the relator was cognizant of the proceedings for the alteration and for the construction of the new road during most of the time of construction, and that the alteration is a great public benefit, both in reducing the grade and in shortening the distance 100 yards and in changing the road from a distance of 100 feet from the tracks of the New York Central Railroad to 300 yards. The commissioners affirm that they are vested with full authority in and complete jurisdiction over the post road, and that their acts are in conformity with law; that they have for many years exercised jurisdiction over the portion of the post road lying within the limits of the town, and that the road has been maintained and kept in repair with town moneys, and has been from time to time changed as the public needs demanded, and that right to do so has never been questioned by the supervisors.

For two centuries the New York and Albany Post Road has been in existence. In 1703 the Colonial Assembly of New York passed "An act for the Laying out and Regulateing Clearing and preserving Publick Comon highways thro'out this Colony." It provided: "That there be laid out preserved and kept for ever in good and Sufficient Repair" three "Publick Comon & General" highways, to extend one to Connecticut and one on Long Island; "and one other Publick Comon General Highway to Extend from Kings Bridge in the County of West Chester thro' the same County of West Chester Dutchess County and the County of Albany of the breadth of Four Rod English Measure at the Least to be continue and remain for ever the Publick Comon General Road and Highway from King Bridge aforesaid to the Ferry at Crawlew over against the City of Albany." Colonial Laws, p. 532, c. 131. The act further provided that the own-

ers of the townships through which the road ran should clear, mend, and repair the road, and appointed commissioners in the several counties, including the county of Dutchess, whose duty it was to see that the road should be "laid out ascertained and declared" within 18 months after the passage of the act, and to file with the county clerk a full and perfect report and description of the manner and extent of such road. By chapter 317, p. 381, of the Laws of 1882, the board of supervisors of any county could authorize the highway commissioners of any town to alter or discontinue any public highway which had been laid out by the state within its boundaries, on the same conditions as would cover their action in relation to public highways; and this provision is embodied in section 77 of the County Law (chapter 686, p. 1765, Laws 1892). Even if there be any power outside of the Legislature to alter the road, it resides not with the defendant boards, but with the board of supervisors, under section 77, which provides that the board of supervisors of any county "may authorize the commissioners of highways of any town in their county to alter or discontinue any road or highway therein which shall have been laid out by the state under the same conditions that would govern their actions in relation to highways that have been laid out by the local authorities." But the question seems to us to have been set at rest by an act passed in 1896 (chapter 423, p. 386, Laws 1896), entitled "An act to preserve forever the New York and Albany Post Road as a state public highway." It reads as follows:

"Section 1. The old established road along the valley of the Hudson river from the city of New York to the city of Albany, known as the Albany post road, shall be a public highway for the use of the traveling public forever.

"Sec. 2. The said highway shall be kept open and free to all travelers, and shall not be obstructed in any way by any obstacle to free travel.

"Sec. 3. No trustees of any village or corporation of any city upon its route, or board of commissioners of highways of towns, or any other person or board whatever, shall have any power or authority to authorize or license the laying of any railroad track upon said highway, except to cross the same, and any such action shall be void and of no effect.

"Sec. 4. This act shall not apply to any portion of said road within the city of New York, nor shall it apply to the road of the president, directors and company of the Rensselaer and Columbia turnpike, nor to the villages of Sing Sing or Peekskill, in Westchester county.

"Sec. 5. This act shall take effect immediately."

Although a specific purpose of the statute is to exclude the construction of a railroad upon the highway, it seems also to be very clear that the intent was to preserve forever for the use of the traveling public the route of the road as it was then laid out in Dutchess county. The act was a special one, and superseded all statutes which conferred upon supervisors, town boards, or highway commissioners any power to alter the route except as to parts mentioned in the fourth section; that is, certain portions within the city of New York and the counties of Rensselaer, Columbia, and Westchester. The title and the first and second sections of the act indicate that the Legislature intended to "preserve forever the New York and Albany Post Road as a state public highway," and as it had been laid out under the colonial act of 1703. It is denominated a "state public highway." It is to be preserved forever for the use of the traveling

public. Railroads are excluded from it, except to cross it. Free travel is not to be obstructed by any obstacle in any way. All of this indicates the intent of the Legislature to preserve in its entirety the old road, unique in the fact that it connects the metropolis and the capital of the state. In this preservation of the road is included the preservation of the route of the road until it shall be altered by the same legislative authority which created and has thus far preserved it.

ᐧ It may be conceded that the defendant boards have authority to take general supervision of, and to make repairs upon, the road at the expense of the taxpayers of the town; but they may not disregard the plain language of the act of 1896, and make so material an alteration in the route of the road as is disclosed by these proceedings, for the space of nearly a quarter of a mile, without the sanction of the state itself through legislative action. The action of the commissioners is illegal, in that they have assumed jurisdiction to alter materially the route of the road without the authority of the Legislature, and against the provisions of the act of 1896. Although, in view of that statute, it may be unnecessary, we are constrained to say that the commissioners have acted without any authorization of the board of supervisors of Dutchess county, and also by their resolution have declared that the "land forming the bed of the present highway shall, upon the completion of the proposed alteration as herein directed, revert to and become the property of Ruth Mills." There is nothing by which it appears that Mrs. Mills or her grantors ever owned the bed of the highway, and any attempt to transfer the land to her is altogether illegal and inoperative.

For these reasons the determination of the defendant boards must be annulled, with costs. All concur.